IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSE LUIS TAPIA FIERRO, | :: | CIVIL ACTION NO. |
| Alien # 091456635, | :: | 1:10-CV-00223-TCB |
|     Plaintiff, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| CITY OF ATLANTA DEP'T OF | :: | PRISONER CIVIL RIGHTS |
| CORRS., et al., | :: | 42 U.S.C. § 1983 |
|     Defendants. | :: | |

**ORDER AND OPINION**

Plaintiff Jose Luis Tapia Fierro was formerly a detainee at the Atlanta City Detention Center (ACDC) in Atlanta, Georgia, and he is now detained at a "service processing" center for the United States Citizenship and Immigration Services in El Centro, California. (See Doc. 8, Fierro's May 3, 2010 Change of Address Notice.) Fierro has been granted leave to proceed *in forma pauperis*. His civil rights action is now before the Court for a frivolity review.

**I.     The Legal Framework**

    **A.     28 U.S.C. § 1915A Review**

Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous,

malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous when it "has little or no chance of success" – for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless or that the legal theories are indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). See also Ashcroft v. Iqbal, _ U.S. _, 129 S. Ct. 1937, 1951-53 (2009) (holding that Twombly "expounded the pleading standard for all civil actions," to wit, conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible") (internal quotations omitted); Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1187-88 (11th Cir. 2002)

AO 72A
(Rev.8/82)

(stating that "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal").

### B. 42 U.S.C. § 1983 Cause of Action

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a defendant's act or omission under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). If a plaintiff fails to satisfy these pleading requirements or to provide factual allegations supporting a viable cause of action, the claim is subject to dismissal. See Chappell v. Rich, 340 F.3d 1279, 1283-84 (11th Cir. 2003) (affirming district court's dismissal of § 1983 complaint because plaintiffs' factual allegations were insufficient to support asserted constitutional violation). See also L.S.T., Inc. v. Crow, 49 F.3d 679, 683-84 (11th Cir. 1995) (noting that "[i]t is well-established that . . . conclusory allegations are insufficient to state a § 1983 claim for relief").

### II. The Complaint

Fierro, a self-proclaimed Hispanic, sets forth the following allegations in his complaint. In November 2008, he was taken to the Special Management Housing Unit (SMHU) at the ACDC because he had "refused that a black person be assigned to [his]

cell/room." (Doc. 1, Compl. ¶ IV.) The officer who escorted Fierro to the SMHU searched his belongings and "found minor contraband" (including a "Full Razor"). A hearing was conducted regarding Fierro's violations, and he was given sixty days in disciplinary detention. (Id.)

On April 24, 2009, Fierro and a detainee from Nigeria had a physical altercation. Both were taken to the SMHU. The next day, a second physical altercation occurred, which Fierro alleges was provoked by the Nigerian's verbal assault, and Fierro received a total of forty-five days in detention, to be served in the Mental Housing Unit (MHU), while "[t]he Nigerian man stayed in the SMHU and eventually transferred to another facility." (Id.) On July 28, 2009, Fierro was involved in another fight, this time with a different Nigerian detainee. Both were taken to the SMHU. On August 1, yet "another fighting incident broke out" between them. Fierro received thirty-five days in detention for both incidents, and the second Nigerian man was released to the general population. On August 12, the second Nigerian man returned to the SMHU for another incident (his third or fourth at the facility), but he was released into the general population after only four or five days. (Id.) On August 28, 2009, Fierro was served with a "Relocation Order" requiring him to remain in administrative segregation in the MHU for the remainder of his immigration detention.

4

Fierro unsuccessfully grieved this order, alleging racial discrimination in his treatment compared to the treatment of black detainees at the ACDC. (Id.) In his complaint, Fierro seeks various forms of declaratory and injunctive relief and asks that Defendants be prevented from keeping him in the MHU. (Id. ¶ V.)

In his Complaint and Demand for Jury Trial (Doc. 1-1), attached to his civil rights complaint, Fierro elaborates on his allegations, claiming that Defendants "placed and left [him] in isolation among all Mental Health detainees (crazy and mentally disturbed) people [sic] causing severe anguish, harm, damage, [and] injury to [his] state of mind." (Id. at 6.) Fierro alleges that his MHU placement constituted discrimination against him "on the basis of race, skin color and nationality." (Id. at 7.) Fierro alleges that Defendants "exacerbated his suffering by keeping [him] in the (Mental Health Unit) isolation cell throughout months rather than allowing [him] to be placed in a Special Management Housing Unit (SMHU) and/or release[d] to general population, as the black person(s) have, with access to dayroom, other sane people and activities." (Id. at 8.) Fierro alleges that Defendants were deliberately indifferent to the harm caused by his mistreatment during his second and third MHU placements in isolation, resulting from the deplorable conditions at the MHU and their failure to keep the SMHU open, which created "mental and emotional distress to [his]

AO 72A
(Rev.8/82)

well-being," proximately causing him "pain, harm, suffering, anguish, and damage." (Id. at 10.) Fierro alleges two causes of action: (1) violations of his Eighth and Fourteenth Amendment rights due to his administrative segregation for the duration of his MHU detention "on the charge of disorderly conduct" brought by "a Jail Snitch (a Black Person) . . . who was not held in isolation as" Fierro was, and (2) unspecified Georgia state-law claims based on the foregoing racial and national origin discrimination. In his Complaint and Demand for Jury Trial, Fierro seeks compensatory and punitive damages totaling eight million dollars. (Id. at 13-15.)

Attached to Fierro's Complaint and Demand for Jury Trial are various exhibits, including his own affidavit, prepared on September 2, 2009, in which he states that on April 24, 2009, he used his closed fist to hit Oscar A., ostensibly the first Nigerian detainee with whom he fought, in the nose. The next day, Fierro "beat up Oscar [a] second time." He received forty-five days in the MHU over these incidents. (Affidavit, Doc. 1-1 at 40.) On July 28, 2009, a fight between Fierro and Aka Edem, the "Jail-snitch-guy," ostensibly the second Nigerian detainee with whom Fierro fought, "broke out over the hair-clippers," and on August 1, 2009, Fierro "jumped" Aka. Fierro received thirty-five days in disciplinary detention over these incidents, and, on

6

August 28, 2009, he was placed on an indeterminate period of administrative segregation. (Id.)

Also attached to Fierro's Complaint and Demand for Jury Trial is the October 5, 2009 response to his allegation of discrimination, in which the City of Atlanta responding officer stated that Fierro "acknowledge[d] being the perpetrator in all [four] of the incidents" in which he was involved while at ACDC, including his attack on "a fellow inmate with a bar of soap wrapped inside a sock" while in disciplinary detention. (Id. at 43.) In Fierro's October 19, 2009 appeal from the responding officer's decision – that Fierro's allegation of discrimination was unfounded – Fierro noted that he had informed the officer that he "was involved in two altercations with two (2) blacks persons [sic] from Nigeria, Africa and that after being placed in the Special Housing Unit (SHU) there were two more incidents with the same blacks detainees [sic]." (Id. at 52.) In a December 10, 2009 memorandum order denying Fierro's appeal, the City of Atlanta responding officer stated that "[i]nformation contained in [Fierro's] five disciplinary files indicates [he was] the aggressor in three incidents with sustained violations," and that he "willfully agreed to a hearing waiver in the remaining two cases which resulted in settlements of 10 and 20 days

respectively in disciplinary segregation." (Id. at 50.) Apparently, Fierro does not challenge these basic facts of his case.

### III.  Discussion

Fierro alleges that his equal protection rights were violated. However, in general,

> [t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike. Thus, to establish an equal protection violation a plaintiff ordinarily shows that the state treated him differently from a similarly situated person based on a constitutionally protected interest.

Holloman v. Jacksonville Hous. Auth., No. 06-10108, 2007 U.S. App. LEXIS 1940, at *7-8 (11th Cir. Jan. 30. 2007) (citation and internal quotations omitted) (citing Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001), which states that "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race") (internal quotations omitted).

Fierro's allegations do not state a viable claim of racial or national origin discrimination. Fierro does not dispute the record evidence that he was the aggressor

8

in the incidents for which he was disciplined. His allegations that those whom he attacked were treated more leniently than he are unavailing because, as the victims of Fierro's aggressive behavior, they were not similarly situated to him. Fierro's generalized allegations that black detainees were treated more favorably than Hispanic detainees are equally unavailing. In short, Fierro has provided no support for his claim that, based on his race or national origin, he received less favorable treatment than similarly situated detainees. He simply has not identified any such similarly situated detainee, i.e., one with a history of institutional assaults upon the members of a racial group towards which that detainee had expressed animosity.

Furthermore, Fierro may not obtain in this § 1983 action damages for emotional injury because he has not alleged that he suffered any physical injury. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In general, "[i]n order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002). Accordingly, Fierro's claim that he suffered psychological damage

AO 72A
(Rev.8/82)

by being exposed to mentally infirm detainees is unavailing. Finally, because Fierro is no longer detained at the ACDC, his claims for prospective relief are now moot. See McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) (stating that, generally, "a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief").

## IV. Conclusion

For the foregoing reasons, this Court finds that Fierro's complaint fails to state a claim on which relief may be granted, and it is **DISMISSED WITHOUT PREJUDICE**. See 28 U.S.C. § 1915A(b)(1).

**IT IS SO ORDERED** this 4th day of January, 2010.

_____
TIMOTHY C. BATTEN, SR.
UNITED STATES DISTRICT JUDGE